**No. 24-5457**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

ADOLFO CARDENAS,

Plaintiff-Appellant,

v.

CITY OF SANTA MARIA AND ANDY BRICE

Defendant-Appellees.

On Appeal from the United States District Court
for the Central District of California
No. 23-CV-10146-MRW
Hon. Michael R. Wilner

_____

**APPELLANT'S OPENING BRIEF**

_____

Brian T. Dunn, Esq. (SBN 176502)
THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Blvd, Suite 1010
323-435-8205
bdunn@cochranfirm.com

Attorneys for Appellant Adolfo Cardenas

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASES

*Beets v. Cnty. of Los Angeles,* 669 F.3d 1038 (9th Cir. 2012) . . . . . . . . . . . . . . 8, 9

*Briseno v. City of West Covina*, 2021 WL 6690564
(C.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25, 26

*Graham v. Connor,* 489 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Heck v. Humphrey,* 512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hooper v. Cnty. of San Diego*, 629 F.3d 1127 (9th Cir. 2011) . . . . . . . . . . . . . 6, 9

*Lemos v. Cnty. of Sonoma,* 40 F.4th 1002 (9th Cir. 2022) . . . . . . . . . . . . . . . . . 11

*Nelson v. Campbell,* 541 U.S. 637, 647 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Williams,* 26 Cal. App. 5th 71 (2018) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Rodriguez v. Farmers Ins. Co. of Arizona,*
No. CV 09-06786 JGB (AJWx), 2014 WL 12696740
(C.D. Cal. May 29, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Smithart v. Towery,* 79 F.3d 951 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sanford v. Motts,* 258 F.3d 1117 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. City of Hemet,* 394 F.3d 689 (9th Cir. 2005) . . . . . . . . . . . . . 8, 9, 10, 11

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.,*
282 F.R.D. 216 (D. Ariz. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Yount v. City of Sacramento* (2008) 43 Cal.4th 885 . . . . . . . . . . . . . . . . . . 20, 21, 22

**STATUTES**

28 U.S.C. § 1291 ................................................... 7

28 U.S.C. § 1331 ................................................... 7

28 U.S.C. § 1367 ................................................... 7

42 U.S.C., Section 1983 ...................................... passim

California Penal Code Section 148(a) ........................... passim

**PUBLICATIONS**

*Judicial Council of California Criminal Jury Instructions,*
(2024 edition) .................................................. 12

# INTRODUCTION

In this § 1983 action arising out of allegations of excessive force in the form of a tasing incident which resulted in severe injuries to Plaintiff Adolfo Cardenas, (*See* [Dkt. 22, at p. 15.) Defendant City of Santa Maria successfully dismissed Plaintiff Adolpho Cardenas's Complaint pursuant to *Heck v. Humphrey,* 512 U.S. 477, 487 (1994)("*Heck*"), due to Plaintiff Cardenas's misdemeanor criminal conviction for violating Penal Code Section 148(a), commonly referred to as "Resisting, Obstructing, or Delaying a Peace Officer."

Defendants filed, and the district court granted, a motion for summary judgment based on one, and only one, issue which can be defined as follows: Would success in Plaintiff Cardenas' ("Cardenas'") § 1983 action for excessive force claims necessarily invalidate his criminal conviction under Penal Code Section 148(a) pursuant to *Heck* ? Defendants' motion does not address any issues pertaining to whether, in fact, Officer Brice actually used excessive force against Cardenas during the subject incident, and accordingly does not address the merits of Cardenas' alleged Fourth Amendment deprivations, and does not involve any mention of, or analysis pertaining to, the reasonableness of Brice's use of force under *Graham v. Connor,* 489 U.S. 386 (1989.)  For these reasons, the entire incident is analyzed herein based on the four corners of Brice's eight page police

report[1] which formed the factual bases for his criminal plea.

## A.   <u>The "Heck" Bar</u>

When a plaintiff who has been convicted of a crime under state law seeks damages in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey,* 512 U.S. 477, 487 (1994). If the answer is yes, the suit is barred. *Id. Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011). In other words, if the conviction or sentence arises out of the same facts that underlie the alleged unlawful behavior for which damages are sought, the § 1983 suit must be dismissed. *Smithart v. Towery,* 79 F.3d 951, 952 (9th Cir.1996). If a civil plaintiff seeks damages in a § 1983 suit, a district court must therefore consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed. *Heck,* 512 U.S. at 487.

The Supreme Court has since emphasized that it was "careful in *Heck* to stress the importance of the term 'necessarily,' " as, for example, when the Court "acknowledged that an inmate could bring a challenge to the lawfulness of a

---

[1] Officer Brice's Police Report was "Exhibit A" to Defendants' Moving Papers, and is filed in Volume 2 of the Excerpts of Record at Dkt. 27.

search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not 'necessarily imply that the plaintiff's conviction was unlawful.' " *Nelson v. Campbell,* 541 U.S. 637, 647 (2004) (quoting *Heck,* 512 U.S. at 487 n.7.) ("To hold otherwise," the Court explained, "would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination—suits that could otherwise have gone forward had the plaintiff not been convicted.") *Id.*

## JURISDICTIONAL STATEMENT

As this is a civil action brought pursuant to 42 U.S.C. § 1983, the District Court had jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 1367. (2-ER-22-44.) This appeal was timely filed on September 5, 2024 (2-ER-186-198) following the granting of Defendants' motion for summary judgment. (1-ER-2). As such, this appeal is from a final judgment and this court has jurisdiction pursuant to 28 U.S.C.§ 1291.

## ISSUES PRESENTED

In a case in which a §1983 Plaintiff has alleged that he was (1) involved in a vehicle pursuit, which was (2) followed by a protracted standoff with the involved officer which occurred while the §1983 plaintiff was seated in his vehicle, which

was then followed by (3) a foot pursuit which culminated in allegations of
excessive force during a tasing incident at an apartment building, if that § 1983
Plaintiff pled no contest to a violation of Penal Code §148, commonly known as
"resisting arrest", has that plaintiff successfully alleged that the tasing incident
which occurred at the conclusion of the incident was distinct "temporally" and
"spatially" from the events underlying his §148 conviction sufficient to defeat the
*Heck* bar?

**ARGUMENT**

**I.      A § 1983 Plaintiff's Allegations of Excessive Force Are Not Barred If
the Officer's Conduct Is Distinct "Temporally" or "Spatially" from the
Factual Basis for the Plaintiff's Conviction**

The Ninth Circuit has consistently held that a plaintiff's allegation of
excessive force by a police officer is not barred by *Heck* if the officer's conduct is
"distinct *temporally* or *spatially* from the factual basis for the [plaintiff's]
conviction." *Beets v. Cnty. of Los Angeles,* 669 F.3d 1038, 1042 (9th Cir. 2012)
(citing *Smith v. City of Hemet,* 394 F.3d 689, 699 (9th Cir. 2005) (en banc)).
California courts are in accord. *See People v. Williams,* 26 Cal. App. 5th 71, 89-90
(2018). (If a peace officer is correctly conducting duties at the time a defendant
violates statute governing resisting, delaying, or obstructing officer and

subsequent to the violation, excessive force is used, the violation is not invalidated. Cal. Penal Code § 148(a)(1).)

When a plaintiff bringing an excessive use of force claim has been convicted of resisting arrest under Penal Code § 148(a)(1) or Penal Code § 69, application of the *Heck* bar turns on the relationship between the arrest that has been determined lawful in the criminal case and the use of force alleged to have violated plaintiff's rights. For example, an "allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction." *Beets v. County of Los Angeles,* 669 F.3d 1038, 1042 (9th Cir. 2012); *accord People v. Williams* (App. 6 Dist. 2018) 236 Cal.Rptr.3d 587 (A conviction for resisting, delaying or obstructing a peace officer based on conduct that occurred before officers commence the process of arresting defendant is not necessarily rendered invalid by the officers' subsequent use of excessive force in making the arrest.) Similarly, *Heck* does not bar an excessive force claim based on allegations that the force used was unreasonable in relation to the degree of resistance to arrest. *Hooper v. County of San Diego,* 629 F.3d 1127, 1133 (9th Cir. 2011). Such a claim, if proven, would not imply the invalidity of a conviction for resisting arrest. *Id.* In sum, *Heck* does not bar claims against police for excessive force arising from

conduct independent of the facts giving rise to a plaintiff's prior conviction. *Smith v. City of Hemet,* 394 F.3d 689, 698 (9th Cir. 2005.)

**II.    In § 1983 Actions Alleging Excessive Force, Where There Are a Variety of Accusations Which May Formulate the Basis for a Criminal Conviction, Defendants Have the Burden of Demonstrating That Success in the Plaintiff's § 1983 Action Would Necessarily Imply the Invalidity of the Plaintiff's Criminal Conviction**

In *Sanford v. Motts,* the Ninth Circuit rejected Defendants' invocation of the *Heck* bar in a case involving a plaintiff who was convicted of resisting arrest, and later claimed that the arresting officer unlawfully punched her, reasoning as follows:

> As plaintiffs observe, there were a variety of accusations against Sanford in the reports of the officers at the scene, among them that she hit Motts when he was arresting Drequinn and that she hit Motts when he was fighting with Love. Either one of these incidents may have been the basis for her conviction. *It was the burden of the defendants to establish their defense by showing what the basis was*; they failed to do so.

*Sanford v. Motts,* 258 F.3d 1117, 1119 (9th Cir. 2001)(emphasis added.)

**III.   The Ninth Circuit Has Repeatedly Instructed That in Cases Involving *Heck* Challenges Arising out of Guilty Pleas, the Court must Specifically Determine Which Acts Formed the Factual  Basis for the Conviction, Which Necessarily Involves Analyzing the Contents of any**

**Police Reports that Defendants Claims Provide the Factual Basis for the Conviction**

Our Circuit has repeatedly instructed that the determination of whether success on a plaintiff's section 1983 claim would necessarily imply the invalidity of that plaintiff's conviction requires the reviewing court to determine specifically which acts formed the basis for the conviction. When the conviction is based on a guilty plea, such as Plaintiff Cardenas's guilty plea in the instant case, the reviewing court is instructed to look at the record to see which specific acts formed the factual basis for the plea, which in this instance would necessarily involve analyzing the facts contained in the police reports. *Lemos v. Cnty. of Sonoma,* 40 F.4th 1002, 1006 (9th Cir. 2022), citing *Smith v. City of Hemet,* 394 F.3d 689, 696–97 (9th Cir. 2005). It follows that the reviewing court *must delve into the facts contained in the specific police reports* which a defendant contends support the factual basis for its claim that a plaintiff's § 1983 action cannot legally coexist with his criminal conviction. (*Id.*)

A. <u>Elements of PC 148</u>

The pertinent criminal jury instruction concerning the elements of P.C. § 148(a) illustrates the specific elements of P.C. 148(a):

**2656. Resisting Peace Officer, Public Officer, or EMT (Pen. Code,§ 148(a))**

The defendant is charged with (resisting[,]/ [or] obstructing[,]/ [or] delaying) a (peace officer/public officer/emergency medical technician) in the performance or attempted performance of (his/her) duties [in violation of Penal Code section 148(a)].

To prove that the defendant is guilty of this crime, the People must prove that:

      1.     [Officer Andy Brice] was a peace officer lawfully performing or attempting to perform his duties as a peace officer;

      2.     The defendant willfully resisted, or obstructed, or delayed Officer Andy Brice in the performance or attempted performance of those duties; AND

      3.     When the defendant acted, he knew, or reasonably should have known, that Officer Andy Brice was a peace officer performing or attempting to perform his duties.

Judicial Council of California Criminal Jury Instructions, (2024 edition), at No. 2656.

As set forth herein, Cardenas' encounter with Officer Brice can be analyzed in four separate and distinct phases:

## IV.   THE FOUR PHASES OF CARDENAS' ENCOUNTER WITH OFFICER BRICE

### A.   **FIRST PHASE OF INCIDENT** - *While Plaintiff Cardenas Was Driving the Blue Pickup Truck and While Officer ANDY BRICE was Driving a Marked Police Motorcycle*

The following are verbatim excerpts from Officer Brice's police report:

-12-

On Monday, October 4, 2022 I was assigned to traffic patrol and riding a marked police motorcycle . . . To assist patrol I requested that dispatch send me calls for service that a single officer could handle. While in the area of Betteravia and Millier on my way to a trespassing call, I overheard a neighboring agency (Guadalupe PD) involved in a series of calls. *Initially, a hit and run into a wall was broadcast followed soon after by Officer Heath Miller (Call sign 51-03) broadcasting that he was in pursuit of a blue pickup truck. I told dispatch that I was going to stage near the area of Main/Blosser which was the likely entry point into the city. There were no other backup officers available at the time.*

*Officer Miller chased the pickup to the outskirts of Santa Maria (about 1-2 minutes) and then elected to stop chasing.* The truck was last seen in the area of Russell/Church. Officer Miller confirmed that the driver of the pickup truck was subject to arrest for felony evading in a reckless manner (2800.2 CVC) and hit and run (20002(a)(1) CVC). I checked the area and could not locate the truck. Officer Miller was able to broadcast a further description of the truck and the driver. *He said the truck he chased was a blue, lowered, single-cab pickup truck, possibly a 2007 model year, with oversized rims. Additionally, the truck was missing its rear bumper and no license plate was visible on the back of the truck. Miller also said there was large black "Ridgid" tool box in the truck bed. The driver was described as a Hispanic male with long hair and no shirt.*

*At approximately 1536 hours while in the area of 900 W Cook, I was flagged down by a passerby who reported that a blue truck matching the description of the suspect vehicle has been seen "all over the road" and nearly hitting cars at Depot/Cook and then again at Railroad/Cook. The person (unidentified) told me the truck was last seen westbound on Cook at a high rate of speed. I broadcast the information and proceeded to check the immediate area.*

*I was then sent to take a report of another hit and run at Railroad/Lemon. Based on the information given by the victim, I believed the hit and run suspect was the suspect blue truck involved in the earlier pursuit. About a minute later, dispatch informed me the suspect truck was possibly in the area of 500 S. Oakley, which was only a few blocks from my location. There*

-13-

*I encountered a truck that matched the description given by Officer Miller exactly.* (2-ER-84-85.)

### 1.  <u>How Cardenas Violated PC 148 during the First Phase of the Incident</u>

*First Prong*: Clearly Brice was on duty and "in the lawful performance of his duties" when he searched for Cardenas' blue pickup truck after the time in which Officer Miller elected to stop chasing Cardenas, which presumably occurred due to the ending of the Guadalupe city limits and at the beginning of the Santa Maria city limits.

*Second Prong*: As Cardenas was in active flight from law enforcement, first from Officer Miller, and later from Brice, Cardenas clearly "willfully resisted, or obstructed, or delayed Brice in the performance or attempted performance of those duties" as he continued to drive his blue pickup truck through the city of Guadalupe, and before he was apprehended in his truck by Brice.

*Third Prong:* After being pursued by Guadalupe Officer Miller, Cardenas "knew, or reasonably should have known", that he was being pursued by law enforcement, and the fact that Officer Miller elected to turn the chase

over to Officer Brice did not alter the character of Cardenas's flight from

law enforcement.

Hence, all three elements of PC 148(a) were violated by Cardenas during

the First Phase.

B.    **SECOND PHASE OF INCIDENT** - *After Cardenas' Blue Pickup Truck Had Come to Rest, and While Officer Brice was on Foot, and While Cardenas was Seated Inside the Truck*

The following are verbatim excerpts from Officer Brice's police report:

I drove slowly toward the truck and saw an arm resting on the driver's side window area. *I stopped immediately, and ordered the driver to put his hands up and to not move. The driver did not comply. I repeatedly gave commands to the driver while I waited for backup to arrive, I held the driver at gunpoint. The driver did not follow any of my commands, and continually reached around inside the cab where my view was obstructed. The driver screamed something that seemed like he was saying "Glass." Several times he looked out the window and back at me. His hands were not visible and he continually screamed and scowled.* The suspect's actions were erratic and he became increasingly angry. I could also see that there was a significant amount of glass in the street that appeared to be broken bottles consistent with someone in the truck throwing bottles in the street. The broken glass was about 20 ft. away from the truck.

About 15 seconds into holding the driver at gun point, he suddenly flung the driver's door open. (2-ER-850.)

1.    **How Cardenas Violated PC 148 During the Second Phase of the Incident**

*First Prong*: Clearly Brice was on duty and "in the lawful performance of

his duties" when he approached Cardenas' blue pickup truck, located Cardenas, and issued commands to him.

*Second Prong*: As set forth in Brice's police report, Brice *"repeatedly gave commands"* to Cardenas at gunpoint while waiting for backup, and Cardenas *"did not follow any of [Brice's] commends, and continually reached around inside the cab where [Brice's] view was obstructed. [Cardenas] screamed something that seemed like he was saying "Glass." Several times he looked out the window and back at me. [Cardenas'] hands were not visible and he continually screamed and scowled."* Id. Clearly these facts demonstrate that Cardenas "willfully resisted, or obstructed, or delayed Brice in the performance or attempted performance of those duties" while Cardenas was seated in the pickup truck.

*Third Prong:* As evidenced by the above analysis, Brice had made his official authority obvious, held Cardenas at gunpoint. As such, Cardenas clearly "knew, or reasonably should have known" that Brice was a peace officer performing or attempting to perform his duties while seated in the pickup truck.

Hence, all three elements of PC 148(a) were violated by Cardenas during the Second Phase.

C.    <u>**THIRD PHASE OF INCIDENT**</u> - *After Cardenas' exited the Blue Pickup Truck on Foot, and While Cardenas Began Slowly Walking Towards Officer Brice*

The following are verbatim excerpts from Officer Brice's police report:

> *When he got out of the truck and started to walk toward me, I believed the driver's mental state was altered in some way as if he was either intoxicated or under the influence of drugs. He was profusely sweating and staggering. He was not wearing a shirt. He kept advancing toward me while screaming, "Glass, OK!!"* Seeing that the subject was shirtless and his hands appeared empty I transitioned to my taser device. *I continued to give commands to "Get down!".* I activated the safety switch to illuminate the red aiming laser.

### 1.    How Cardenas Violated PC 148 during the Third Phase of the Incident

*First Prong:* Clearly Brice was on duty and "in the lawful performance of his duties" after Cardenas exited the pickup truck.

*Second Prong:* As set forth in Brice's police report, Brice "continued to give commands to "Get down!" to Cardenas, who, according to Brice, "*kept advancing toward me while screaming, "Glass, OK!!"* sufficient to demonstrate that Cardenas "willfully resisted, or obstructed, or delayed Brice in the performance or attempted performance of those duties" while Cardenas was slowly advancing walking towards Brice after exiting the

pickup truck sufficient to satisfy the second prong of § 148.

*Third Prong:* As evidenced by the above analysis, Brice had made his official authority obvious from the outset of the encounter when he held Cardenas at gunpoint. As such, Cardenas clearly "knew, or reasonably should have known" that Brice was a peace officer performing or attempting to perform his duties while seated in the pickup truck.

Hence, all three elements of PC 148(a) were violated by Cardenas during the Third Phase.

D. **FOURTH PHASE OF INCIDENT** - *After Cardenas' Exited the Blue Pickup Truck and Ran Across the Street from Officer Brice and Into and Apartment Complex*
(*Note, the Fourth Phase of the incident, and only the Fourth Phase, is illuminated with a yellow highlighter in Defendants' Exhibit A*)

The Fourth Phase is distinguishable because it culminated in the unreasonable use of force that forms the basis of this case.

As articulated in Officer Brice's report, after Cardenas did not obey Brice's command to "Get down" and continued to slowly walk in the direction of Officer Brice, while screaming "Glass! OK!" at Brice, Cardenas then abruptly changed his direction, and began to run in the opposite direction of where Officer Brice was

standing. (2-ER-85.) During this Fourth Phase, Cardenas turned and quickly ran away from Officer Brice, and fled across the street. (*Id.*) After seeking Cardenas quickly run away from him, Officer Brice gave chase. As Cardenas swiftly fled on foot, Officer Brice observed Cardenas to have gained a "50 foot lead" on Brice, as Cardenas had run from Brice with sufficient speed to increase his distance from Brice to a distance of approximately 50 feet. (*Id.*) After Cardenas quickly ran away from Officer Brice, Brice observed Cardenas running in the direction of an apartment complex located across the street from the area adjacent to the blue pickup truck where the Third Phase of the incident had occurred. (*Id.*) Throughout the time in which Cardenas began running across the street and into the subject apartment complex, Brice repeatedly screamed commands to Cardenas to "get down", while Cardenas continued his flight through the street and into the apartment complex. (*Id.*)

After Cardenas entered the apartment complex, Cardenas ran into a stairwell within the apartment complex which contained 20-30 stairs. (*Id.*) While Cardenas was in the stairwell, Plaintiffs allege that Officer Brice unlawfully discharged his Taser at Cardenas. (2-ER-36-38.)

**V.  PLAINTIFF CARDENAS' ALLEGATIONS OF EXCESSIVE FORCE ARE NOT BARRED BECAUSE OFFICER BRICE'S USE OF UNREASONABLE FORCE AT THE CULMINATION OF THE FOURTH PHASE OF THE INCIDENT IS DISTINCT "TEMPORALLY" AND "SPATIALLY" FROM THE FACTUAL BASIS FOR CARDENAS' § 148 CONVICTION**

The Ninth Circuit has consistently held that a plaintiff's allegation of excessive force by a police officer is not barred by *Heck* if the officer's conduct is "distinct *temporally* or *spatially* from the factual basis for the [plaintiff's] conviction." *Beets v. Cnty. of Los Angeles,* 669 F.3d 1038, 1042 (9th Cir. 2012) (citing *Smith v. City of Hemet,* 394 F.3d 689, 699 (9th Cir. 2005) (en banc)).

The California Supreme Court case of *Yount v. City of Sacramento* (2008) 43 Cal.4th 885 ("Yount") is instructive. The plaintiff in *Yount* had been the defendant in a criminal case that resulted in him pleading no contest to a violation of section 148(a)(1). (*Yount,* 43 Cal.4th at p. 891. After being placed into a police car, Yount banged his head and kicked inside the car. He refused to provide identification to the police and continued kicking even after being warned that the police would use a Taser. (*Id.* at p. 890.) An officer did use a Taser, but Yount only "became more violent." (Ibid.) As officers pulled Yount out of the police car,

Yount kicked one of the officers. He continued resisting even after three officers restrained him. (*Id.* at pp. 890-891.) An officer decided to use a Taser again, but "mistakenly grabbed his pistol" and shot Yount in the buttocks. (*Id.* at p. 891.) After his criminal case resolved, Yount sued the officer who had shot him, as well as the City of Sacramento, for damages under both state and federal law, alleging that the officer had used excessive force by shooting him at a time when he was not attempting to interfere with the officers. (*Id.*)

Similar to Defendants here, the city and shooting officer in *Yount* alleged that Yount's federal and state law claims were barred by *Heck*. The *Yount* defendants argued that Yount's federal and state law claims had to be dismissed because Yount's section 148(a)(1) conviction had not been invalidated and a judgment in his favor would impliedly render that conviction invalid. Like Plaintiff Cardenas, Yount argued that because his section 148(a)(1) conviction encompassed multiple acts of resistance, his § 1983 claims would not necessarily invalidate that conviction. (*Yount,* 43 Cal.4th at p. 888.)

The California Supreme Court held that Yount could pursue his claim with respect to the officer's use of deadly force, because that would not imply that the section 148(a)(1) violation was invalid, (*Id.* at p. 899), reasoning that since Yount did not "deny that he resisted the officers (or that the officers had the right to

respond with reasonable force), he pose[d] no challenge to his conviction" by challenging the officers' use of deadly force. (*Id.* at p. 900) explaining why the officers' use of deadly force required a separate analysis from the claim of excessive force, the Yount court acknowledged that " 'two isolated factual contexts' " could exist within " 'one continuous chain of events.' " (*Id.,* at 899) The court indicated that in such a case, it would be appropriate to examine the timing of an officer's excessive force in determining whether a claim was barred by *Heck*: As the court explained:

> " 'For example, a defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it.' "

(*Id.*)

A similar analysis compels the denial of the *Heck* bar in the instant case. Like plaintiff Yount, Cardenas' § 148(a)(1) conviction encompassed multiple acts of resistance that could have formed the bases of his conviction, including the acts of resistance identified in the First, Second, and Third Phases of the Incident analyzed in Part II. *supra.* Also, like plaintiff Yount, Cardenas does not deny that

he resisted the officers in earlier phases of the encounter; instead Cardenas only challenges the unreasonable use of the taser that occurred *at the conclusion of the Fourth Phase of the Incident.* This is analytically identical to the Yount court's distinction between the officers' use of *deadly force* at the end of the encounter as being distinguished spatially and temporally from the acts of resistance that occurred while Yount was being detained in the police vehicle. (*Id.* at p. 900) Here, we have a very similar situation: the acts of resistance while Cardenas was in his vehicle (Second Phase of Incident) were not accompanied by any use of force and bear no challenge to the lawfulness of Officer Brice's conduct. Accordingly, Cardenas' acts of resistance while disobeying Brice's commands while seated in the pickup truck are entirely distinguishable, both in time and space, from the use of force that occurred after Cardenas exited the vehicle, ran across the street, and up the stairwell where the unlawful use of force occurred, during the Fourth Phase of the Incident.

1.    **Defendants' Reliance on *Briseno v. City of West Covina* Is Misplaced Because in *Briseno,* the Officer's Conduct Was Not "Distinct Temporally or Spatially from the Factual Basis for the [Plaintiff's] Conviction.**

Defendants rely heavily on *Briseno v. City of West Covina*, 2021 WL 6690564 (C.D. Cal. 2021.) In detailing the factual basis for Plaintiff Briseno's

stipulated criminal plea, the *Briseno* Court examined the most relevant police report available, known as the "*Paparro report*", which described the foot chase of Plaintiff; Plaintiff's refusal to comply with a command to stop running (Plaintiff "refused and continued to run");Baton strikes to Plaintiff's arm ("I then struck S-Ruben [Plaintiff Briseno] for the following reasons" [ ] "I gave S-Ruben multiple commands to show me his hands and to lay on the ground, but he refused"); Knee strikes to Plaintiff's ribs ("S-Ruben's hands immediately tucked into his waistband area[.] I attempted to grab S-Ruben's hands from under his person and he began to kick his legs and sway his body away from me[.] Fearing that S-Ruben was reaching for a weapon, I used my right knee to strike S-Ruben approximately twice on his right ribcage."); and finally the officers' eventual success in grabbing Plaintiff's hands and putting him in handcuffs. (*Id.*) *Briseno v. City of W. Covina,* No. CV 20-2986 MRW, 2021 WL 6690564, at *2 (C.D. Cal. Dec. 23, 2021.) Stripped to its essence, the *Paparro report* crystalized the factual basis for the Plaintiff's criminal plea into a singular, distinct, event coming in the form of a distinctly identifiable foot pursuit culminating in a violent takedown by officers. Considering this factual basis, the District Court in *Briseno* had no alternative other than to apply the *Heck* bar, because in *Briseno,* the officer's conduct was not "distinct temporally or spatially from the factual basis for the

[plaintiff's] conviction." (*See Beets v. Cnty. of Los Angeles,* 669 F.3d 1038, 1042 (9th Cir. 2012) (citing *Smith v. City of Hemet,* 394 F.3d 689, 699 (9th Cir. 2005) (en banc)). Put another way, as defined in the *Paparro report,* there was no "temporal distinction" because, for *Heck* purposes, there was no break in the action from the moment in which the foot pursuit began and violently ended, these all occurred simultaneously in the exact same act, *e.g.,* the foot pursuit. Similarly, because the entire event unfolded during a singular foot pursuit, there was no "spacial distinction", because there was no way Plaintiff Briseno could argue that during this foot pursuit, the use of force occurred in some other location separate and apart from the path of the foot pursuit itself. Hence, in *Briseno,* the facts were such that Plaintiff was barred from asserting that the use of force occurred *before* any alleged resistance that may have given rise to his § 148 conviction, nor *after* any alleged resistance, *nor in any other location* that was separate and apart from the foot pursuit. In affirming the District Court's reasoning in *Briseno,* the Ninth Circuit obviously agreed with the absence of any temporal distinction between the acts of resistance on the use of force, concluding "*Heck* precludes Briseno from bringing an excessive force claim "predicated on allegedly unlawful actions by the officer *at the same time* as the plaintiff's conduct that resulted in his § 148(a)(1) conviction." *Briseno v. City of W. Covina,* No. 22-55100, 2023 WL 2400833, at *1

(9th Cir. Mar. 8, 2023) (emphasis in original.) Significantly, in analyzing *Briseno,*

another District Court recognized that: "Without the information from the police

report, there would have been no way to evaluate whether the civil claims

overlapped with the timeline that formed the basis for the § 148(a)(1) conviction."

*See King v. Villegas,* No. 1:17-CV00676 JLT-EPG (PC), 2023 WL 4627687, at *7

(E.D. Cal. July 19, 2023.) It follows that because Defendants have chosen to

withhold the operative police reports from the Court's analysis, there is no way for

this Court whether the civil claims overlapped with the timeline that formed the

basis for the § 148(a)(1) conviction" and Defendants' motion must be denied

accordingly. (*Id.*)

2. **Ninth Circuit Rule 36-3(a) Holds That as an Unpublished Decision, *Briseno* is not binding outside the context of the *Briseno* matter**

According to the dictates of Ninth Circuit Rule 36-3(a), *Briseno v. City of*

*W. Covina,* No. CV 20-2986 MRW, 2021 WL 6690564 is unpublished and

therefore is not binding outside the context of the *Briseno* matter. *See Rodriguez v.*

*Farmers Ins. Co. of Arizona,* No. CV 09-06786 JGB (AJWx), 2014 WL

12696740, at *2 (C.D. Cal. May 29, 2014) (finding unpublished Ninth Circuit

opinion did not constitute a change in controlling law) (citing *Teamsters Local*

*617 Pension & Welfare Funds v. Apollo Grp., Inc.,* 282 F.R.D. 216, 225 (D. Ariz.

2012)).

## IV. CONCLUSION

For all the foregoing reasons, Defendants' Motion must be denied in its entirety.

DATED: December 16, 2024      Respectfully submitted,

**THE COCHRAN FIRM CALIFORNIA**

By: /s/ Brian T. Dunn
  BRIAN T. DUNN
Attorney for  Plaintiff

## CERTIFICATION OF COMPLIANCE

I, Brian T. Dunn, declare as follows:

This document contains 5539 words, as computed by the Word Perfect program used to generate it, and is within the parameters prescribed by the Local Rules in this regard.

DATED: December 16, 2024       Respectfully submitted,

           **THE COCHRAN FIRM CALIFORNIA**

By: /s/ Brian T. Dunn
      BRIAN T. DUNN
      Attorney for  Plaintiff Cardenas