No. 24-5457

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

ADOLFO CARDENAS

*Plaintiff - Appellant*

v.

CITY OF SANTA MARIA,
ANDY BRICE

*Defendants - Appellees.*

---

On Appeal from the United States District Court
for the Central District of California
Case No. 23-CV-10146-MRW
The Honorable Michael R. Wilner

---

**APPELLEES' ANSWERING BRIEF**

---

ERIC J. BENGTSON – BAR NO. 254167
STEVEN B. DIPPELL – BAR NO. 121217
**DAVIS BENGTSON & YOUNG, APLC**
1960 The Alameda, Suite 210
San Jose, California 95126
669-245-4200 – Telephone
eric@dby-law.com
sdippell@dby-law.com

THOMAS T. WATSON
OFFICE OF THE CITY
ATTORNEY
**CITY OF SANTA MARIA**
204 E. Cook Street
Santa Maria, CA 93454
805.925.0951 - Telephone
twatson@cityofsantamaria.org

1

*Attorneys for Defendants and Appellees*
CITY OF SANTA MARIA
and ANDY BRICE

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................1

II.  JURISDICTIONAL STATEMENT .......................................1

III.  STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........1

IV.  ADDENDUM ……………………………………………… 2

V.  STATEMENT OF THE CASE...........................................2

    A.  Cardenas' 148 P.C. Conviction ………………………………2

    B.  The Factual Basis for the 148 P.C. Conviction ………………………3

    C.  Cardenas' Lawsuit ……………………………………………8

VI.  SUMMARY OF ARGUMENT ..........................................9

VII.  ARGUMENT ...................................................................10

    A.  The Standard of Review ………………………………………10

    B.  Cardenas' Claims Are Barred By His Criminal Conviction ……… 11

VIII.  CONCLUSION.................................................................23

STATEMENT OF RELATED CASES....................................24

CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............25

CERTIFICATE OF SERVICE ...............................................26

i

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...........................................10

*Beets v. County of Los Angeles,* 669 F.3d 1038 (9th Cir. 2012).............................11

*Briseno v. City of W. Covina,* 2021 U.S. Dist. LEXIS 250197

    2021 WL 6690564 (C.D. Cal. 2021) ...................................................................13

*Briseno v. City of W. Covina,* 2023 U.S. App. LEXIS 5501 (9th Cir. 2023) .. 15, 16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................10

*Heck v. Humphrey,* 512 U.S. 477 (1994) ........................................................ *passim*

*Hooper v. County of San Diego,* 629 F.3d 1127 (9th Cir. 2011) ................... *passim*

*Lemos v. Cnty. of Sonoma,* 40 F.4th 1002 (9th Cir. 2022)...................... 12, 13, 21, 22

*Lyall v. City of Los Angeles,* 807 F.3d 1178 (9th Cir. 2015) ..................................11

*Martell v. Cole,* 115 F.4th 1233 (9th Cir. 2024) ....................................... 12, 21, 22

*Ricci v. DeStefano,* 557 U.S. 557 ...........................................................................10

*Sanders v. City of Pittsburg,* 14 F.4th 968 (9th Cir. 2021)............................ *passim*

*Sanford v. Motts,* 258 F.3d 1117 (9th Cir. 2001)................................................ 12, 19

*Smith v. City of Hemet,* 394 F.3d 689 (9th Cir. 2005) ....................................... 12, 17

*Zetwick v. Cnty. of Yolo,* 850 F.3d 436 (9th Cir. 2017)...........................................10

**STATE CASES**

*Truong v. Orange County Sheriff's Dept.,* (2005) 129 Cal.App.4th 1423...............18

*Yount v. City of Sacramento,* 43 Cal.4th 885 (2008)...................................... *passim*

**CODES**

42 U.S.C. section 1983 ………………………………………… 8, 16, 19, 20, 23

Penal Code section 148(a)(1)......................................................................... *passim*

Vehicle Code section 20002(a)(1) ………………………………………… 5

**RULES**

Circuit Rule 28-2.7 ......................................................................................2

Federal Rule of Civil Procedure 56(c) ...................................................10

## I.     INTRODUCTION

Appellant Adolfo Cardenas ("Cardenas") pled "no contest" in Santa Barbara County Superior Court to violating California Penal Code section 148 during his brief encounter with Santa Maria Police Officer and Appellee Andy Brice ("Brice"). Cardenas and his legal counsel offered Brice's police report, which described Brice's use of a Taser to take Cardenas into custody, to the Superior Court, and the court accepted it, as the factual basis for that charge, and now he is attempting in this civil action to assert that the very same use of the Taser by Brice was excessive force. The trial court correctly concluded Cardenas' claims are barred as a result of his criminal conviction, and Cardenas now appeals.

## II.     JURISDICTIONAL STATEMENT

The Appellees do not contest jurisdiction.

## III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the trial court properly concluded Cardenas' contentions are barred as a result of his conviction by the Santa Barbara Superior Court, and the factual basis he offered, for violating California Penal Code section 148(a)(1) during his contact with Ofc. Brice. See *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and *Yount v. City of Sacramento*, 43 Cal.4th 885, 76 Cal.Rptr. 3d 787, 183 P.3d 471 (2008).

## IV.    ADDENDUM

There are no pertinent constitutional provisions, treaties, statutes, ordinances, regulations or rules to set forth in a separate Addendum as contemplated by Circuit Rule 28-2.7.

## V.    STATEMENT OF THE CASE

### A.    Cardenas' 148 P.C. Conviction.

On January 9, 2023, Cardenas was charged in Santa Barbara Superior Court with various felony and misdemeanor counts for his criminal conduct across two cities on October 24, 2022. (2-ER-000124-125.) Count 3 of the criminal complaint alleged Cardenas "did willfully and unlawfully resist, delay or obstruct A. Brice, a police officer attempting to and discharging the duty of his/her office and employment" in violation of California Penal Code section 148(a)(1). (2-ER-000125.) On September 14, 2023, while represented by legal counsel and with the aid of an interpreter, Cardenas pled "no contest" to all the charges pending against him. (2-ER-000127-136.) Cardenas offered the police report describing his conduct "as the basis for my plea of guilty or no contest and any admissions," and said: "I understand that the court may consider [it] as proof of the factual basis for my plea . . . ." (2-ER-000134.) Cardenas' legal counsel also executed an Attorney's Statement in conjunction with the court's acceptance of Cardenas' plea that said: "I hereby stipulate that there is a factual basis for the plea and refer the court to the

2

lXl police report . . . ." (2-ER-000135.) Based upon the representations of Cardenas and his counsel, the Hon. Judge Patricia L. Kelly of the Superior Court concluded there was a factual basis for his plea and admissions, accepted them, and Cardenas was convicted based thereon. (2-ER-000136.) The transcript of the proceeding before the Superior Court is available for review at 2-ER-000137-145.

**B.** **The Factual Basis for the 148 P.C. Conviction**.

The Santa Maria Police Department report (the "SMPD Report," submitted for review at 2-ER-000083-120), which includes Brice's description of his brief encounter with Cardenas, is the only report that provided a factual basis for Cardenas' P.C. 148 conviction, as that charge was expressly and specifically linked in Count 3 of the criminal complaint (2-ER-000125) to his encounter with Brice. Cardenas acknowledges in this appeal that Brice's eight-page police report (2-ER-000083-89) "formed the factual bases (sic.) for his criminal plea." (Appellant's Opening Brief ("AOB"), pp. 5 – 6.) Brice's police report is summarized below.

Cardenas' litany of known criminal acts on the day of his arrest began earlier, in the neighboring City of Guadalupe. The Guadalupe Police Department report (the "Guadalupe PD Report," available for review at 2-ER-000069-79), which provided the factual basis for Cardenas' other convictions, is also summarized below merely to provide context for the events described in the SMPD Report.

According to the Guadalupe PD Report, Cardenas drove his truck into and through a cinder block wall at the Guadalupe Cemetery during the afternoon of October 24, 2022, causing major damage to both the wall and his vehicle, and then fled the scene in his vehicle. (2-ER-000073.) While enroute to the scene, a Guadalupe Police Officer located Cardenas' vehicle traveling at a high rate of speed. (2-ER-000074-75.) The officer activated the lights and siren on the patrol vehicle and observed Cardenas passing other cars on the right shoulder of the road. (*Id*.) When the officer caught up to Cardenas, Cardenas lost control of his truck, drove towards and nearly struck the officer head-on, and then drove in a circle around the patrol car. (*Id*.) Cardenas then drove down the center turn-lane of the roadway, passing vehicles. (*Id*.) As Cardenas approached a busy intersection, the Guadalupe officer terminated the pursuit. (*Id*.) The officer observed Cardenas drive through the intersection against a red light, and updated Santa Maria Police officers who might be in the area. (*Id*.) Santa Maria Police Department advised him that "they would not be taking over the pursuit due to the reckless behavior of D-1" (the driver of the truck). (2-ER-000075.) The Guadalupe officer then went to investigate the incident at the cemetery. (*Id.*)

According to the SMPD Report, Ofc. Brice of the Santa Maria Police Department was working traffic patrol and riding a police motorcycle when he first heard the "hit and run" call in the neighboring city of Guadalupe, and then heard

4

that a Guadalupe officer was in pursuit of a pickup truck. (2-ER-000086.) He also heard the Guadalupe officer terminate the pursuit, and advise that the driver was subject to arrest for felony evading in a reckless manner (Cal. Veh. Code section 2800.2) and "hit and run" (Cal Veh. Code section 20002(a)(1)). (*Id.*) Brice checked the area but did not locate the truck. (2-ER-000086.) Cardenas' contention in this appeal that the Guadalupe officer "turn(ed) the chase over to Officer Brice" (AOB, pp. 14 – 15) is incorrect.

Brice was then flagged down by someone who reported that a truck had been "all over the road" and nearly hit some other cars in the area of Depot and Cook and then again at Railroad and Cook. The vehicle matched the description of the vehicle pursued earlier by the Guadalupe officer. (*Id.*)

Brice was then dispatched to a report of another "hit and run" accident at Railroad and Lemon and was told by dispatch a short while later that the suspect vehicle was possibly in the area of 500 S. Oakley. (*Id.*) Brice, who was a few blocks away, found the vehicle, which matched the description of the vehicle pursued earlier by the Guadalupe officer, parked in the 400 block of Oakley. (2-ER000083, 86-87.)

Brice drove slowly towards the truck and saw it was occupied. He stopped, gave the occupant of the truck – Cardenas – commands, and tried to hold him at gunpoint until backup arrived, but Cardenas did not follow his commands. (2-ER-

000087.)

After about 15 seconds, certainly *not* a "protracted standoff" as described in Cardenas' brief at AOB, p. 7, Cardenas got out of the truck and walked toward Brice. Cardenas appeared to be intoxicated or under the influence of drugs, was sweating profusely and staggering, and screaming, "Glass, OK!!" Brice had noted there was a significant amount of glass on the street that appeared to be broken bottles, consistent with someone throwing them from the truck. Seeing that Cardenas was shirtless and his hands appeared empty, Brice transitioned to his Taser and continued to give Cardenas commands. Cardenas turned to his right and broke into a slow run across the street and into an apartment complex driveway. (*Id.*)

Brice first checked to see that no one else was in the truck, and then chased after Cardenas on foot, repeatedly giving Cardenas commands to get on the ground. Cardenas instead ran up a steep, narrow and dark staircase in the apartment building. (*Id.*)

Cardenas' Opening Brief dutifully quotes verbatim large portions of Brice's report (AOB, pp. 13 – 19), and recounts in detail and without question what it says happened -- *up to this point*, where Cardenas runs up the staircase. Then, significantly, Cardenas' brief omits what the police report states happened next, including how Cardenas was taken into custody, and substitutes a single

6

conclusory allegation from his complaint for all that information. (AOB, p. 19.) It is beyond coincidence that, as discussed in greater detail below, the portion of Brice's police report that Cardenas chose to omit was quoted by the trial court verbatim (1-ER-000004) and found to be "fatal to his claim of excessive force" (1-ER-000008).

The portion of the SMPD Report omitted from Cardenas' brief, and found to be dispositive by the trial court, states that when Cardenas, who Brice thought to be about six feet tall and two hundred pounds, reached the top of staircase he began kicking at the door of one of the apartments there, and Brice thought he was attempting to force entry. (2-ER-000087.) After that effort failed, Cardenas turned towards Brice at the top of the stairs, held his hands down to his sides, clenched his fists, flexed his upper body, made a guttural growling sound, and appeared to be psyching himself up for a physical confrontation with Brice. (2-ER-000087-88.) Cardenas then charged down the stairs directly at Brice. When Cardenas reached two to three steps up from Brice's position, Brice discharged his Taser at Cardenas. Cardenas fell forward and onto the ground, Brice turned off the Taser before it concluded the normal five-second activation cycle, and Cardenas was taken into custody without further resistance. The Guadalupe police officer who had pursued Cardenas responded to the arrest scene and identified Cardenas as the person who had fled from him earlier. (2-ER-000088.)

7

C.  **Cardenas' Lawsuit.**

Following his criminal convictions, Cardenas sued the City of Santa Maria

and Brice (collectively referred to herein as the "City Defendants"). Cardenas'

First Amended Complaint (2-ER-000025-46) (the "FAC") admitted that he

engaged in a litany of criminal acts during what his attorney creatively

characterized as "phases" of criminal conduct that day. The FAC, like his Opening

Brief in this appeal, alleges Cardenas committed several violations of California

Penal Code section 148, selectively misinterpreting and ignoring portions of the

SMPD report that provided the factual basis for his P.C. 148 conviction, but that all

of Cardenas' criminal conduct suddenly ceased just before Brice employed the

Taser and took him into custody. Based on those allegations, the FAC attempts to

assert causes of action for violation of 42 U.S.C. section 1983 for an unreasonable

use of force, battery, negligence, and violations of California Civil Code section

52.1.

The City Defendants moved for summary judgment on all of Cardenas'

claims on the ground they are irreconcilable with his conviction for violation of

California Penal Code section 148, and therefore barred pursuant to the United

States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.

Ct. 2364, 129 L .Ed. 2d 383 (1994), and the California Supreme Court's decision

8

in *Yount v. City of Sacramento*, 43 Cal. 4th 885, 76 Cal.Rptr. 3d 787, 183 P.3d 471 (2008).

The motion was fully briefed and the trial court conducted a lengthy hearing. (1-ER-000005.) Cardenas' counsel raised a new contention for the first time during oral argument, and the court gave him an opportunity to submit a supplemental brief on that specific topic. (1-ER-000009.) However, instead of pursuing this new contention, Cardenas submitted a supplemental brief containing entirely new and different arguments. (2-ER-000146-168.)

The trial court subsequently issued a detailed Order Granting Summary Judgment (1-ER-000003-11).[1] Cardenas now appeals from the judgment (1-ER-000012) resulting from that Order.

## VI.    SUMMARY OF ARGUMENT

Cardenas' claims in this action are irreconcilable with his conviction for violation of California Penal Code section 148, the factual basis for which was Brice's police report describing Cardenas' arrest, include use of a Taser to take Cardenas into custody, and Cardenas' claims are therefore barred pursuant to the

---

[1] Among other things, the trial court's Order Granting Summary Judgment concluded that the "late-offered arguments" in Cardenas supplemental brief (2-ER-000146-168) had been waived and, even if they could be considered, were founded upon incorrect information. (1-ER-000009-11.) Even though his appeal does not contest the trial court's conclusions regarding his supplemental brief, and he does not refer to it in his Opening Brief, Cardenas has included his supplemental brief in the Excerpts of Record. The City Defendants respectfully submit that it should be disregarded.

United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L .Ed. 2d 383 (1994), and the California Supreme Court's decision in *Yount v. City of Sacramento*, 43 Cal. 4th 885, 76 Cal.Rptr. 3d 787, 183 P.3d 471 (2008).

## VII.   ARGUMENT

### A.   The Standard of Review.

Review of an order granting summary judgment is *de novo*. *Zetwick v. Cnty. of Yolo,* 850 F.3d 436, 440 (9th Cir. 2017).

As the trial court noted:

12. Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A "genuine issue" exists only if there is a sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).


13. The party seeking summary judgment bears the burden of demonstrating a right to judgment under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quotation and citation omitted).

1-ER-000005-6.

The trial court's decision correctly applied these principles to the undisputed facts and concluded the City Defendants were entitled to judgment as a matter of law. (1-ER-000003-11.)

### B.    <u>Cardenas' Claims Are Barred By His Criminal Conviction.</u>

The records of the Santa Barbara Superior Court and the SMPD Police Report establish that Cardenas' criminal conviction for a violation of California Penal Code section 148 is a bar to his contentions in this case pursuant to the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (1994), and the California Supreme Court's decision in *Yount v. City of Sacramento*, 43 Cal.4th 885, 76 Cal.Rptr.3d 787, 183 P.3d 471 (2008), "California's state-law equivalent" to *Heck*." *Chavez v. City of California,* 2020 U.S. Dist. LEXIS 44164, *6 (E.D. Cal. 2020). (The doctrines described in *Heck* and *Yount* are, for ease of convenience, jointly referred to herein as the "*Heck* Bar.") As the trial court stated:

> 15. A civil rights claim against a law enforcement officer or agency is barred where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1190 (9th Cir. 2015) (same). If a criminal conviction "is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012). 16. Under California law, a person violates Penal Code section 148(a)(1) where she or he "resists, delays, or obstructs a police officer in the lawful exercise of his or her duties. The lawfulness of the officer's conduct is an essential element of the offense." *Hooper v.*

11

*County of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011) (cleaned up).

17. An individual "can't be convicted under § 148(a)(1) if an officer used excessive force at the time of the acts resulting in the conviction." *Sanders v. City of Pittsburg*, 14 F.4th 968, 971 (9th Cir. 2021). The lawfulness of the police conduct "is necessarily established as a result of the conviction under § 148(a)(1)." *Id.* (citing *Hooper*). "Consequently, an excessive force claim can't survive the *Heck* bar if it's predicated on allegedly unlawful actions by the officer at the same time as the plaintiff's conduct that resulted in his § 148(a)(1) conviction." *Id.* (emphasis in original).
1-ER-000006.

There are, of course, various paths that can lead to a criminal conviction, such as a jury verdict, as described in *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022), a guilty or "no contest" plea without any explanation of the factual basis for the plea in the record, as described in *Martell v. Cole*, 115 F.4th 1233 (9th Cir. 2024), or, as is the case in the pending matter, a "no contest" plea accompanied by a judicial record that contains the factual basis for the plea, as described in *Sanders v. City of Pittsburg*, 14 F.4th 968 (9th Cir. 2021). When the criminal court's record includes the factual basis for the plea, this Court has made clear that the criminal court's record defines the scope of the *Heck* Bar.

> To decide whether success on a section 1983 claim would *necessarily* imply the invalidity of a conviction, we must determine which acts formed the basis for the conviction. When the conviction[**11] is based on a guilty plea, we look at the record to see which acts formed the basis for the plea. *See Smith v. City of Hemet*, 394 F.3d 689, 696-97 (9th Cir. 2005) (en banc); *Sanford v. Motts*, 258 F.3d 1117, 1119-20 (9th Cir. 2001).

*Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022).

The distinguishing and dispositive characteristics shared by *Sanders*, the trial court's prior decision in *Briseno v. City of W. Covina*, 2021 U.S. Dist. LEXIS 250197, 2021 WL 6690564 (C.D. Cal. 2021), affirmed by this Court in *Briseno v. City of W. Covina*, 2023 U.S. App. LEXIS 5501 (9th Cir. 2023), and the pending matter is that the plaintiffs in all three cases pled "no contest" to a Penal Code section 148 charge, offered a factual basis for that plea – a preliminary hearing transcript in *Sanders* (*Sanders*, *supra*, at p. 970), and police reports in *Briseno* (*Briseno*, *supra*, 2021 U.S. Dist. LEXIS 250197, *3) and the present matter – which the Superior Court accepted in support of the plea, and then argued in their subsequent civil rights cases that their criminal convictions were predicated on only some, not all, of the events described in the factual basis for their criminal court pleas. That argument was rejected by this Court in *Sanders*, by the trial court in *Brieseno* which was affirmed by this Court, once again by the trial court in this case, and should be rejected again by this Court.

The facts of the *Sanders* case are analogous to those in the present matter. The plaintiff there, driving a stolen car, first led officers on a car chase, then a foot chase, scuffled with officers when he was tackled, and a police K-9 was finally employed when he continued to struggle, which allowed the officers to handcuff

13

and arrest him. (*Sanders*, *supra*, at p. 970.) Evidence regarding all those events was presented during a preliminary hearing. The plaintiff subsequently pled "no contest" to violating section 148 and offered the preliminary hearing transcript as the factual basis for his plea. He later brought a civil rights case alleging the officer's use of the police dog was excessive force in violation of the Fourth Amendment. The defendants' motion to dismiss based on the *Heck* defense was granted, and the plaintiff appealed.

The plaintiff in *Sanders*, like Cardenas in the pending matter, argued on appeal that his civil rights claim was not barred by *Heck* because his 148 conviction could have been based on his earlier conduct, before he was arrested, when he fled from the officers, not on his conduct at the time of his arrest when the police K-9 was employed. (*Sanders*, *supra*, at p. 970.) This Court distinguished its earlier decision in *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011), where "the record was silent on which act or acts formed the basis for her conviction" (*Sanders*, *supra*, at p. 971), and rejected the plaintiff's argument because it was irreconcilable with the factual basis *he had presented* in support of his plea.

> Here, we cannot separate out which of Sanders's obstructive acts led to his conviction since all of them did. As part of his guilty plea, Sanders stipulated that the factual basis for his conviction encompassed the three instances of resistance identified in the preliminary hearing transcript. Specifically, Officer Bryan testified that he ordered his dog to bite Sanders's right calf as he observed

14

other officers struggling to apprehend Sanders's arms in the gully. So unlike *Hooper*, the dog bite in this case is unquestionably part of the actions that formed the basis of Sanders's conviction. Under these facts, there is no way to carve out the dog bite from the § 148(a)(1) conviction without "necessarily imply[ing]" that the conviction was invalid. *Heck*, 512 U.S. at 487. <u>Because the dog bite was part of the §148(a)(1) conviction's factual basis, it was necessarily lawful for purposes of the *Heck* analysis.</u> (Emphasis added.)

*Sanders, supra,* at p. 972.

Cardenas' Opening Brief <u>does not even mention</u> the *Sanders* case, much less attempt to distinguish it. Instead, Cardenas' appeal is devoted entirely to trying to convince the Court that his brief encounter with Brice should be viewed as comprised of different "phases," and that his P.C. 148 conviction was predicated on an earlier "phase" that was "distinct temporally or spatially" from the "phase" when the Taser was employed to arrest him. This is the same argument, using different language, that was rejected in *Sanders* and *Briseno*. The pre-arrest "phases" of Cardenas' encounter with Brice are analytically indistinguishable from the car chase, foot chase and initial struggle described in *Sanders*, and the running from the police, refusing to lay down, and hiding of hands under his body in *Briseno*. Similarly, the applications of force that ended the resistance and resulted in those plaintiffs' arrests, and subsequently became the subject of their civil rights actions, are indistinguishable from Brice's use of the Taser to arrest Cardenas. In *Sanders* and *Briseno* the plaintiffs' claims were barred by *Heck* because the dog

15

bite in *Sanders* and the baton strikes in *Briseno* were part of the factual basis for the plaintiffs' criminal convictions. As this Court said, "*Heck* bars any § 1983 claim alleging excessive force based on <u>an act or acts constituting any part of the factual basis of a § 148(a)(1) conviction</u>." (Emphasis added.) *Sanders, supra*, at p. 972. The Court held that:

> Sanders cannot stipulate to the lawfulness of the dog bite as part of his § 148(a)(1) guilty plea and then use the "very same act" to allege an excessive force claim under § 1983. *Id.* [*973] Success on such a claim would "necessarily imply" that his conviction was invalid. *Heck*, 512 U.S. at 487. Sanders's claim against Officer Bryan is, therefore, barred under *Heck*.
>
> *Sanders, supra*, at pp. 972-973.

As a result, the Court affirmed the trial court's dismissal of the plaintiff's civil rights claims:

> The factual basis for Sanders's plea was based on multiple acts of resisting arrest, including his struggle with officers when the K-9 bit him. Because a favorable judgment on his § 1983 claim would necessarily call into question the validity of his conviction, we affirm the dismissal of his claims.
>
> *Sanders, supra*, at p. 973.

Cardenas acknowledges "that the reviewing court *must delve into the facts contained in the specific police reports* which a defendant contends support the factual basis for its claim that a plaintiff's § 1983 action cannot legally coexist with his criminal conviction . . . ." (Emphasis in original; AOB, p. 11.) Despite this recognition, Cardenas omits from his Opening Brief, and fails to address in any

16

way, the detailed description of Brice's use of the Taser to arrest him contained in the police report that Cardenas acknowledges (AOB, pp. 5 – 6) was the factual basis Cardenas offered to, and was accepted by, the Superior Court for his P.C. 148 conviction (2-ER-000087-88). Cardenas also fails to acknowledge that, as the *Sanders* court said, "any part of the factual basis of a § 148(a)(1) conviction" is barred by *Heck*. (*Sanders, supra*, at p. 972.) And he fails to acknowledge or address that the portion of the Brice report he omitted from his Opening Brief is the portion that the trial court found to be "fatal to his claim of excessive force." (1-ER-000008-9.) As the trial court correctly concluded:

> 25. On that "clear record," Plaintiff's admission that he resisted Brice (and the stairway growling, etc. surely fall within the scope of the state crime) is therefore fatal to his claim of excessive force. *Smith*, 394 F.3d at 699. Given the acknowledgement that Brice used the taser on Plaintiff while Plaintiff was obstructing the officer, he conceded the reasonableness of the use of that force when he admitted criminal liability under Section 148. *Hooper*, 629 F.3d at 1130.

1-ER-000008-9.

A criminal defendant who represents that a document provides a factual basis for a "no contest" plea admits that the document accurately describes what occurred, and that what occurred was a violation of the statue charged. Cardenas and his criminal defense attorney chose to offer the entire Brice police report as the basis for his plea, including the portion that describes the circumstances surrounding Brice's use of the Taser, not just the portions of the report describing

17

his pre-arrest conduct, which he now tries to characterize as earlier "phases" of the event. As noted in *Yount v. City of Sacramento*, 43 Cal. 4th 885, 897 (2008), "(h)ad Yount wanted to maximize his ability to challenge the officers' conduct in a subsequent civil action, *he* could have sought to identify and limit the basis for his plea to violating Penal Code section 148, subdivision (a)(1). (See *Truong v. Orange County Sheriff's Dept.* (2005) 129 Cal.App.4th 1423, 1426 [29 Cal.Rptr.3d 450].)" (Emphasis in original.)

Cardenas' effort to divide his brief encounter with Brice into "phases" is not only contrary to *Sanders*, it is flawed. For instance, the first "phase" Cardenas suggests (AOB, pp. 12 - 15) erroneously asserts "Officer Miller elected to turn the chase over to Officer Brice," and that Mr. Cardenas somehow resisted, obstructed or delayed Brice before the two of them had even come into contact. The encounter between Cardenas and Brice lasted just minutes, was one continuous event, and the Taser was employed in self-defense and to take Cardenas into custody. This is not a case like *Hooper, supra*, where the conduct that provided the factual basis for a guilty plea was unknown, or a case where force was employed either before or after Cardenas was arrested. In *Yount*, the California Supreme Court described why Cardenas' proposed analysis is contrary to *Heck*:

> The rule proposed by the Court of Appeal and embraced by Yount would also have the perverse effect of rewarding those (like Yount) who engage in multiple acts of resistance with the right to pursue a civil action against the officers, since [***798] only those who

commit a single act of resistance will find their civil action barred by *Heck*. Under such a scheme, as defendants observe, "the more egregious and more numerous the violations of Penal Code section 148 perpetrated by a criminal defendant, the better that defendant's chances of pursuing a Section 1983 action and avoiding the *Heck* bar." Granting such offenders the right to pursue a civil suit arising out of the same transaction on which their criminal plea is based merely by the expedient of ensuring that the civil action excludes at least one act of resistance (or at least one officer [****24] being resisted) is inconsistent with the high court's general reluctance [**481] "to expand opportunities for collateral attack." (*Heck*, *supra*, 512 U.S. at p. 485.)

*Yount, supra*, at p. 897.

Cardenas argues that it was the City Defendants' burden to establish the basis for the *Heck* defense. (AOB, p. 10.) The City Defendants satisfied that burden by providing the Superior Court's records regarding Cardenas' criminal conviction and the police report that provided the factual basis for his "no contest" plea which includes a description of the circumstances surrounding Brice's use of the Taser to arrest Cardenas. Cardenas' reliance on *Sanford v. Motts*, 258 F.3d 1117 (9th Cir. 2001), to suggest otherwise is misplaced. Unlike the pending matter, the Court in *Sanford* had no record of the factual basis for the plea at issue ["Nothing in the record informs us what the factual basis was for Sanford's plea of nolo." *Sanford, supra,* at p, 1119], and the case concerned a claim that excessive force had been employed *after* an arrest had been made ["Excessive force used after an arrest is made does not destroy the lawfulness of the arrest." *Sanford, supra* at p.1120].

Cardenas' argument based upon the California Supreme Court's decision in *Yount v. City of Sacramento,* 43 Cal.4th 885 (2008) (AOB, pp. 20 - 23) is both puzzling and misplaced. Yount was a "weapon confusion" case where an officer accidentally shot a person *after he had been taken into custody* but continued to resist. The person pled no contest to a violation of section 148, but "Yount made a deliberate decision to waive a preliminary hearing and stipulated to a factual basis for the plea without any explicit recitation of what those facts were." *Yount*, *supra,* at p. 895. As a result, unlike the pending matter, there was no agreed-upon detailed description of the factual basis for the plea comparable to Brice's report. Further, contrary to what one might conclude from the description of the *Yount* case in the Cardenas' brief, the California Supreme Court recognized and applied the *Heck* defense in the case, but also found under the unique circumstance of that case that a limited claim arising from the accidental use of deadly force after the arrest had occurred could proceed.

Cardenas' argument that *Yount* somehow supports his argument that his brief encounter with Brice should be divided into "phases" is contrary to this Court's interpretation of the case in *Sanders*. As the *Sanders* Court noted:

> And while *Hooper* held that a continuous transaction can be broken into "different actions" for purposes of a § 1983 action, it did not suggest we may slice up the *factual basis* of a § 148(a)(1) conviction to avoid the *Heck* bar. On the contrary, *Yount*—the case relied on by *Hooper*—specifically [**10] rejected this argument. In *Yount*, a § 1983 plaintiff attempted to avoid *Heck* by arguing that

his § 148(a)(1) conviction could stand on any of his multiple acts of resistance, and "so long as *one* act of resistance remains undisturbed to support the criminal conviction, it is immaterial that success on the section 1983 claim might be inconsistent with *other* facts that supported the criminal conviction." *Yount*, 43 Cal.4th at 896. But the court soundly rejected that contention: "Yount's conviction established his culpability during the entire episode with the four officers, and any civil rights claim that is *inconsistent with even a portion of that conviction* is barred because it would necessarily imply the invalidity of that part of the conviction." *Id.* (emphasis added). Accordingly, *Yount* found that the factual basis of a § 148(a)(1) conviction encompassing multiple acts is indivisible for purposes of avoiding a *Heck* bar. *Id.* at 895-96. (Footnote omitted.)

*Sanders, supra*, at p. 972.

Cardenas' argument that his arrest was temporally or spatially distinct from his earlier pre-arrest conduct also relies upon a test that appears to have been rejected by this Court, even in those cases where a plea is *not* accompanied by a factual basis. ["In *Lemos*, our en banc court rejected the view that *Heck* precludes a plaintiff's suit absent a clear "temporal or spatial distinction or other separation between the conduct for which [the plaintiff] was convicted . . . and the conduct which forms the basis of her Section 1983 claim. "*Lemos*, 40 F.4th at 1007 (second alteration in original)." *Martell v. Cole*, 115 F.4th 1233, 1237 (9th Cir. 2024).] More importantly for the purposes of this appeal, Cardenas' argument fails to recognize or acknowledge that the appropriate test for application of the *Heck* Bar in a case such as this, where a "no contest" plea *was accompanied by a factual*

*basis*, offered by the plaintiff and accepted by the court, is whether the conduct alleged in the subsequent civil action was part of that factual basis. ["We held in *Lemos* that *Heck* does not bar a § 1983 action even when the plaintiff alleges the officer used excessive force during one of several resisting or obstructing acts that "could be the basis for the guilty verdict" *if the record does not show that this particular act was the factual predicate for the plaintiff's § 148(a)(1) conviction*." (Citation omitted; Emphasis added.) *Martell*, *supra*, at p. 1237 (9th Cir. 2024).]

Cardenas and his legal counsel offered the police report to the Superior Court, admitted that it provided the factual basis for his 148 P.C. plea, and the court accepted it. (2-ER-000127-136.) The SMPD Report regarding Cardenas' encounter with Brice describes in detail how Cardenas appeared to prepare for a physical confrontation, charged down the stairs at him, and how Brice discharged his Taser at Cardenas only when he (Cardenas) reached the bottom two or three steps, and even includes photographs showing their respective positions when it was discharged. (2-ER-000083-120.) It is clear from the report that discharge of the Taser is what allowed Cardenas to be taken into custody. This is <u>not</u> a case where a criminal suspect was taken into custody for a violation of P.C. 148, and excessive force was allegedly employed before or after the arrest.

The *Heck* Bar applies equally to Cardenas' State law claims, and Cardenas does not contend otherwise in this appeal. "(W)e cannot think of a reason to

22

distinguish between section 1983 and a state tort claim arising from the same alleged misconduct . . . ." *Yount v. City of Sacramento*, 43 Cal. 4th at p. 902.

## VIII. CONCLUSION

For the reasons enumerated herein and in the District Court's decision, the Appellees respectfully request that the judgment of the District Court be affirmed.

Respectfully submitted,

DATED: February 12, 2025

/s/ Steven B. Dippell
Steven B. Dippell
DAVIS, BENGTSON & YOUNG, APLC
Attorneys for Defendants - Appellees
CITY OF SANTA MARIA and ANDY
BRICE

## <u>STATEMENT OF RELATED CASES</u>

No other cases in this Court are deemed related to this case pursuant to Circuit Rule 28-2.6.

Dated:  January 11, 2023

s/  Steven B. Dippell

## **CERTIFICATE OF COMPLIANCE FOR BRIEFS**

I certify that this brief contains 5,639 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2019.

Dated:  February 12, 2025

s/  Steven B. Dippell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **Appellees' Answering Brief** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 12, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 12, 2025

s/ Debbie Myers